**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CLARISA BORCHERT, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-CV-0839-CVE-SAJ |
| ) | |
| **THE STATE OF OKLAHOMA, ex rel. THE** ) | |
| **BOARD OF REGENTS FOR OKLAHOMA** ) | |
| **STATE UNIVERSITY, a.k.a.** ) | |
| **OSU/OKMULGEE, a constitutional state** ) | |
| **agency,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Now before the Court is defendant's motion for summary judgment (Dkt. # 22). Defendant, Oklahoma State University-Okmulgee ("OSU" or "defendant"), moves for summary judgment on plaintiff Clarisa Borchert's claims that she was subjected to a hostile work environment and later terminated on the basis of her pregnancy in violation of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k).

### I.

Plaintiff began her employment as a child care attendant at the OSU-Okmulgee Child Care Center ("the Child Care Center") in January 2001. Angelia McCall, manager of the Child Care Center, was plaintiff's direct supervisor. McCall reported to James Byrd, the Director of Student Union Services and Special Events, who is responsible for the hiring, discipline, and termination of employees in the Child Care Center, functions he exercises in consultation with the manager of the Child Care Center. During the period in question, Judith Henson served as payroll and personnel

supervisor for OSU. Among her duties was determining whether an employee of the university could continue to work following the imposition of health-related work restrictions.

In May 2003,[1] plaintiff notified McCall of her pregnancy. Plaintiff claims that McCall, with whom plaintiff previously had an amicable relationship, rolled her eyes and congratulated plaintiff in a "hateful" manner. Plaintiff further alleges that after McCall became aware of plaintiff's pregnancy, she refused to consult with plaintiff regarding issues arising in the Child Care Center, allowed other employees to make harassing comments regarding plaintiff's pregnancy, harassed plaintiff publicly, and removed certain administrative responsibilities from plaintiff and assigned them to other employees who were not pregnant.

On July 9, 2003, plaintiff provided her supervisors with a doctor's note stating that, due to a heat restriction imposed because of her pregnancy, she would no longer be able to supervise children outdoors during their designated outdoors play period. Plaintiff's supervisors, as a result, did not require plaintiff to accompany the children outdoors. On July 28, 2003, plaintiff provided a doctor's note to her supervisors stating that she had to cease work until further notice due to pregnancy complications and thereafter went on leave pursuant to the Family Medical Leave Act ("FMLA").

Plaintiff returned to work on September 3, 2003. On September 8, plaintiff met with Byrd regarding a series of parental complaints lodged against plaintiff in June and July of that year.[2] Byrd

---

[1]  Plaintiff's deposition testimony and affidavit provide different dates for when she notified McCall of her pregnancy. Both, however, state that she confirmed her pregnancy and informed her employer in May 2003.

[2]  The existence and substance of those complaints are the subjects of an evidentiary challenge, but that dispute is irrelevant to the Court's summary judgment ruling.

reviewed with plaintiff an OSU Employment Notice setting forth the requirements of employment as a child care attendant and placed her on a corrective action plan. Plaintiff complains that Byrd failed to conduct an independent investigation into the accuracy of the charges against her and had already determined the necessary punishment without benefit of her version of events.

On or about September 17, 2003, plaintiff provided her supervisors with a doctor's note imposing a ten-pound lifting restriction on plaintiff due to her pregnancy. Henson informed plaintiff that, because of the weight restriction, plaintiff could not continue working in the Child Care Center. Soon thereafter, after consulting with her doctor, plaintiff returned and provided her supervisors with a doctor's note, imposing a twenty-pound lifting restriction on plaintiff's work activities and stating that plaintiff could lift only infants, not toddlers. Henson again informed plaintiff that the weight restriction closed off the opportunity for employment as a child care attendant at the Child Care Center. Henson told plaintiff that she would not be permitted to return to work at the Child Care Center with restrictions of any kind.

Defendant argues that the lifting restrictions imposed by plaintiff's physician made her ineligible for employment as a child care attendant at the Child Care Center. Plaintiff, in turn, argues that, since she was assigned to the infant area after her September return and would not have been providing care to toddlers, her restrictions did not prevent her from performing the necessary job duties of a child care attendant.

Defendant moves for summary judgment on plaintiff's claims on the grounds that (1) there was no legally actionable harassment against plaintiff on the basis of her pregnancy and (2) plaintiff was unable to perform the job that she was employed to do because she was medically unable to lift children who weighed in excess of twenty pounds, which was a requirement of her job.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

4

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff sues for pre-termination hostile work environment based on her pregnancy. No "mathematically precise test" exists to determine whether an environment is sufficiently hostile or abusive to demand relief under Title VII. Harris v. Forklift Systems, 510 U.S. 17, 22 (1993).

> For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victims's employment and create an abusive working environment.

MacKenzie v. City & County of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005). In assessing whether an environment qualifies under this standard, a court is to consider (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. Id. The environment must be both subjectively and objectively hostile or abusive. Id.[3]  In assessing the viability of plaintiff's claim, the Court must consider all of the circumstances relevant to the discrimination to determine if the conduct was sufficiently severe to constitute a hostile work environment. Smith v. Northwest Fin. Acceptance, Inc., 129 F.3d 1408, 1414 (10th Cir. 1997).  The hostile work environment inquiry is a disjunctive

---

[3]  There appears to be no dispute between the parties that plaintiff perceived the alleged actions as hostile, that is, that the environment was subjectively hostile.

one, requiring that the harassing conduct be "sufficiently pervasive *or* sufficiently severe to alter the terms conditions, or privileges of [p]laintiff's employment" Id. at 1413.

Plaintiff claims a variety of allegedly hostile actions were taken against her following the announcement of her pregnancy. She, first, takes issue with Byrd's disciplinary action against her upon her return from medical leave in September 2003. According to plaintiff, Byrd was wrong to wait until her return from medical leave to notify her of parental complaints. Plaintiff further alleges that she was subject to ongoing harassment from both McCall, her supervisor, and a co-worker, Deborah Teel, upon her return in September 2003. McCall allegedly stripped plaintiff of certain administrative responsibilities upon learning of plaintiff's pregnancy and made daily disparaging comments regarding plaintiff's severe and ongoing nausea and vomiting caused by her pregnancy. McCall, plaintiff testified, responded to plaintiff's illness by telling her to "get over it" and said that plaintiff "wasn't really sick" each time plaintiff had to vomit, which occurred every day, throughout the day. Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support (hereinafter "Plaintiff's Response") (Dkt. # 27), Ex. A, Borchert Deposition, at 31. Teel also accused plaintiff of feigning illness.

The evidence relating to Byrd's September 8, 2003 disciplinary meeting with plaintiff lends no support to plaintiff's claim of hostile work environment. Plaintiff objects to Byrd's timing of the meeting, but "mere inconvenience" may not form an actionable claim for hostile work environment. MacKenzie, 414 F.3d at 1281 (noting that the fact that plaintiff was not immediately informed about a particular complaint against her amounts to no more than a mere inconvenience"). Plaintiff makes no allegation that Byrd communicated the complaints in an abusive manner or refused entirely to entertain plaintiff's concerns regarding the complaints. In fact, plaintiff testified

that nothing occurred at the September 8 meeting that she considered to be evidence that her rights were being violated. Plaintiff's Response (Dkt. # 27), Ex. A, Borchert Deposition, at 49.

Remaining, then, are the comments made by McCall and Teal during the two week period starting with plaintiff's return on September 3 and her departure on September 18, 2003. During that period, plaintiff claims she was insulted on a daily basis by her direct supervisor and co-worker.[4] McCall repeatedly accused plaintiff of misrepresenting the seriousness of her illness and instructed plaintiff to "get over it" and "get back to work." Teal, similarly, accused plaintiff of exaggerating her illness. If, as plaintiff alleges, these comments occurred at a rate of multiple times a day each workday, they could reasonably be found to constitute a pervasive environment of pregnancy-based hostility. See Zisumbo v. McCleodUSA Telecomm. Services, Inc., No. 04-4119, 2005 WL 3120640, at * 9 (10th Cir. 2005) (concluding that supervisor's comments were pervasive when pregnant plaintiff's supervisor referred to her as "prego" in approximately seventy-five percent of their interactions over a three-month period).

In addition to concluding that plaintiff has alleged sufficient facts to establish pervasive harassment, the Court also identifies in the record evidence that the harassment in question was also severe. The statements of both McCall and Teal were highly insensitive and likely exacerbated the distress created by plaintiff's complication-ridden pregnancy. Moreover, the Court finds significant that many of the alleged remarks came from plaintiff's immediate supervisor, who directed those remarks, in front of other Child Care Center employees, exclusively to plaintiff. See Smith, 129

---

[4] Defendant argues that plaintiff's testimony regarding the statements of McCall and Teal constitute inadmissible hearsay. At the very least, McCall's statements fall under the hearsay exception for statements against interest provided for under Rule 804(b)(3) and are, therefore, admissible.

F.3d at 1414 (affirming district court's denial of judgment as a matter of law when supervisor had directed sexual comments to plaintiff in a public setting of relatively small, open workspace).

The Court determines that plaintiff has submitted evidence from which a rational jury could find that she was subjected to a hostile work environment because of her pregnancy. Mindful of the Tenth Circuit's admonition that the severity and pervasiveness questions implicit in evaluating a hostile work environment claim are "particularly unsuited for summary judgment" because they are quintessentially questions of fact, O'Shea V. Yellow Tech. Services, Inc., 185 F.3d 1093, 1098 (10th Cir. 1999), the Court denies defendant's motion for summary judgment on that claim.

## IV.

With regard to plaintiff's claim of termination on the basis of pregnancy, a federal statute provides:

> It shall be an unlawful employment practice for an employer–
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex, . . . or
>
> (2) to limit, segregate, or classify his employees or applicants for employement in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of such individual's . . . sex . . . .

42 U.S.C. § 2000e-2(a)(1)-(2). By subsequent amendment, known as the PDA, Congress clarified that "on the basis of sex" includes discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; . . ."). Claims brought pursuant to the PDA are analyzed in the same way as other Title VII claims of disparate treatment. EEOC

v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191(10th Cir. 2000).  A plaintiff alleging pregnancy discrimination may do so by submission of either direct or indirect evidence of discrimination.  Id.

Plaintiff attempts to make a direct evidentiary showing of discrimination by claiming that defendant maintained a policy restricting the employment opportunities of pregnant women.  An existing policy which itself constitutes discrimination is direct evidence of discrimination.  Ramsey v. City & County of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990); see also Heim v. State of Utah, 8 F.3d 1541, 1546 (10th Cir. 1993) ("Statements showing an existing policy which constitutes discrimination are direct evidence of discrimination."); 29 C.F.R. § 1604.10(a) ("An unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy, childbirth, or related medical conditions is in prima facie violation of Title VII.").

Plaintiff relies upon the deposition testimony of Henson to establish that defendant maintained a facially discriminatory policy.  Henson testified that, upon being notified by plaintiff of the weight restriction imposed due to her pregnancy, Henson told plaintiff that she "simply could not let her come back to work because she had a weight restriction, and in order to protect us and to protect her, I could not let her work, not being able to lift at all, just not to – her having a restriction on lifting because of where she was."  Plaintiff's Response (Dkt. # 27), Ex. F., Deposition of Judith Henson (hereinafter "Henson Deposition"), at 52.  Plaintiff argues that Henson's testimony reflects a facially discriminatory policy maintained by defendant foreclosing employment opportunities on the basis of pregnancy.

It is not clear, however, that Henson's statement reflected the actual policy of defendant when dealing with employees with health-related limitations on their work abilities.  While Henson

9

may have independently determined that plaintiff should not return to work, university policy permitted plaintiff's return, so long as the restrictions did not prevent plaintiff from completing the responsibilities of her position. See Plaintiff's Response (Dkt. # 27), Ex. F, Henson Deposition, at 63 ("If a pregnant person can perform their job duties, they work."). Although courts have interpreted Title VII to permit the imputation of an employee's discriminatory acts to an employer in certain circumstances, see Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986), the Court has found no case supporting the proposition that a supervisor's incorrect statement of employer policy may constitute direct evidence of a discriminatory policy for the purpose of proving intentional discrimination. This issue need not be resolved, however, since the Court finds that plaintiff has raised a genuine issue of material fact through indirect evidence of intentional discrimination.

A plaintiff seeking to prove intentional pregnancy discrimination through indirect evidence is subject to the same three-prong analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1148 (10th Cir. 1999). Under this framework, a plaintiff must first make a prima facie showing of discrimination. Once plaintiff establishes a prima facie case, a presumption of discrimination arises, and the employer has the burden to produce a "legitimate, nondiscriminatory reason" for its actions. Horizon/CMS Healthcare Corp., 220 F.3d at 1191. If the employer does so, an employee can survive summary judgment only by providing evidence showing either that pregnancy was a "determinative factor" in the defendant's employment decision or that the defendant's explanation is merely pretext for unlawful discrimination on the basis of pregnancy. Id.

A plaintiff establishes a prima facie case of pregnancy discrimination by showing: (1) she was within the protected class, that is, pregnant, at the relevant time; (2) she was qualified for the position and doing satisfactory work; (3) she suffered an adverse employment action; and (4) her position remained open or was filled by another person.[5] See, e.g., O'Hara v. St. Francis Hosp., Inc., 917 F. Supp. 1523, 1527 (N.D. Okla. 1995). The parties' most vigorous dispute relates to plaintiff's qualifications to perform the duties of child care attendant.

Defendant contends that plaintiff's weight restriction prevented her from performing the duties of her job at the Child Care Center, and she was, therefore, unqualified to continue working as a child care attendant. Plaintiff responds that her supervisors made no effort to determine whether her restrictions actually prevented her from completing her specific duties and that she could complete her job duties, notwithstanding the weight restriction.

At the prima facie stage, a plaintiff satisfies her burden of showing she is qualified by presenting some credible evidence that she possesses the objective qualifications necessary to perform the job at issue. Horizon/CMS Healthcare Corp., 220 F.3d at 1193. According to defendant, plaintiff's responsibilities as an attendant included: lifting, carrying, and moving children, feeding children, changing diapers, assisting with toileting, supervising playtime, routine cleaning of the facility, bending, standing, kneeling, and reaching up and down, moving furniture, toys, desks, chairs, etc., administering first-aid, and interacting, supervising, and playing with the children. Defendant's Brief in Support of Motion for Summary Judgment (Dkt. # 23), at 2. The twenty-pound lifting restriction, according to defendant, prevented plaintiff from performing those tasks.

---

[5]   The parties' dispute concerning the correct fourth prong of the prima facie case is addressed at 13-15, infra.

Plaintiff responds that defendant misrepresents her duties, which included, according to an Employment Notice included in the summary judgment record, "working with children on age-specific activities, feeding or assisting with the feeding of children, changing diapers or assisting with toileting, supervising outdoor play, routine cleaning of the facility and equipment, working with parents, and starting up or closing down activities." Plaintiff's Response (Dkt. # 27), at 2-3. Plaintiff contends that she could have completed those functions with the weight restriction in place.

There is little, if any, real difference between the parties' characterization of plaintiff's job duties as an employee at the Child Care Center.[6] There are, however, genuine issues of material fact relating to whether plaintiff could carry out those tasks. Plaintiff testified that after her return in September 2003, she was formally assigned to the care of infants, and all of her charges weighed less than twenty pounds. Plaintiff's Response (Dkt. # 27), Ex. A., Deposition of Clarisa Borchert (hereinafter "Borchert Deposition"), at 102. As a practical matter, however, plaintiff's duties may have required her to care for children within the toddler group as well. Despite her assignment to the infant section of the Child Care Center, if plaintiff had only one infant in her care on a given day, McCall would bring toddlers into plaintiff's area in order to maintain a caretaker-to-child ratio that was compliant with Department of Human Services regulations. Plaintiff's Response (Dkt. # 27), Ex. A., Borchert Deposition, at 91-92. Caring for these children would presumably have been in

---

[6]   While it is unusual that defendant has chosen to include activities like "standing" and "kneeling" within its listing of plaintiff's responsibilities as a child care attendant, it is not inconceivable that the activities expressly listed in the Employment Notice would involve such physical activities. In any event, the Employment Notice describing the functions of a child care attendant states, "Omission of specific statements of duties does not exclude them if the work is similar or logically related to the position." Plaintiff's Response (Dkt. # 27), Ex. J., Employment Notice. The acts of lifting and kneeling are logically related to the functions expressly delineated in the Employment Notice.

violation of her doctor's order. The Court may not resolve this factual issue at the summary judgment stage.

A similar genuine issue of material fact exists regarding the third prong of the prima facie test, that is, that plaintiff suffered an adverse employment action. Plaintiff alleges two adverse employment actions. First, she argues that Henson's refusal to permit her to continue work at the Child Care Center under the twenty-pound weight restriction constituted an adverse employment action. This argument implicates the previously discussed factual dispute regarding plaintiff's actual capacity to continue performing her job duties at the center.

Second, plaintiff claims that her final conversation with Henson regarding the weight restrictions constituted termination of her employment with the Child care Center. Plaintiff cites to a Separation Notice signed by McCall and Byrd in February 2004, stating that plaintiff's "Closing Hour of Actual Service" occurred on September 18, 2003. Plaintiff's Response (Dkt. # 27), Ex. Q, Separation Notice. The Separation Notice further states McCall and Byrd's unwillingness to rehire plaintiff. Id. Defendant responds that plaintiff was, at all times, an at-will employee with the Child Care Center whose employment at the center had to be renewed every semester. Since plaintiff did not provide her supervisor with a work release with no restrictions, did not return to the Child Care Center after September 18, 2003, and did contact her supervisor, defendant argues, her supervisors did not renew her employment for the spring semester. The Court concludes that genuine issues of material fact exist as to both alleged adverse employment actions.

As to the fourth prong of the prima facie test, there is a dispute regarding the precise showing necessary to succeed on a claim of pregnancy discrimination. Defendant argues that plaintiff must submit evidence that her job remained open and that she was replaced by an individual outside of

the protected class, in other words, an individual who was not pregnant. Defendant points out that after plaintiff ceased work at the Child Care Center, she was replaced by Crystal Mason, an individual McCall and Byrd knew to be pregnant at the time of her hiring.

As plaintiff correctly observes, however, "the Supreme Court has not adopted a test requiring a plaintiff to prove that [her] replacement does not share [her] protected attribute." Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999). In Perry, the Tenth Circuit expressly rejected the defendant's argument that a Hispanic plaintiff was required to demonstrate that she was replaced by an individual who was not a member of a racial or ethnic minority to satisfy her prima facie burden. The court in Perry cited with approval the approach of the First Circuit in Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 155 (1st Cir. 1990), a pregnancy discrimination case, wherein the First Circuit held that a Title VII wrongful discharge plaintiff could make out the fourth element of her prima facie case without proving her job was filled by a non-pregnant individual. Perry, 199 F.3d at 1138.

In light of Perry, the Court adopts plaintiff's view of the necessary showing under the fourth prong of the prima facie test. Plaintiff need only provide evidence that, after her departure, defendant had an ongoing need for the services she had rendered on its behalf. See id. at 1140 (holding that evidence of the seeking or hiring of a replacement to fill the position vacated by a discharged plaintiff who is a member of a group which has historically suffered discriminatory treatment is, by itself, sufficient to satisfy the fourth elements of the plaintiff's McDonnell Douglas prima facie case of racial discrimination). It is undisputed that the Child Care Center maintained a need for the work previously performed by plaintiff upon her departure. Plaintiff need demonstrate

nothing more at the prima facie stage. The Court holds that plainitff has made a sufficient evidentiary showing to withstand OSU's motion for summary judgment on prima facie grounds.

Having found that plaintiff has presented sufficient evidence to withstand summary judgment as to her prima facie case of pregnancy discrimination, the Court must evaluate the reasons offered by defendant to explain the actions taken with regard to plaintiff. Defendant, as noted, insists that plaintiff was told she could no longer work at the Child Care Center because the weight restriction imposed by her doctor prevented her from carrying out her job duties.

Since defendant has articulated a nondiscriminatory reason for plaintiff's discharge, plaintiff may withstand summary judgment only by producing evidence sufficient to raise a genuine issue of material fact as to whether defendant's reason for the adverse employment action is pretextual. Horizon/CMS Healthcare Corp., 220 F.3d at 1198. "A plaintiff establishes pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. (internal quotation marks omitted). Evidence in this regard may take "a variety of forms." Id. (internal quotation marks omitted).

In support of her claim of pretext, plaintiff cites Henson's testimony that plaintiff would not be permitted to work in the Child Care Center under any restrictions. Henson, plaintiff claims, advised plaintiff of her inability to work without conducting an independent evaluation of whether the restrictions actually prevented plaintiff from completing her tasks at the center. Plaintiff argues that Henson's refusal to permit plaintiff to work was an impermissible and, in fact, discriminatory attempt to shield OSU from liability. Plaintiff further argues that Henson's departure from the established university policy (of permitting employees whose work restrictions did not prevent them

from completing their job duties to continue work) constitutes evidence that defendant's submitted explanation is pretextual.

The Court finds that plaintiff has raised a genuine issue of material fact as to her ability to perform her duties, and as to the validity of defendant's proffered reason for refusing to allow plaintiff to continue work in the Child Care Center. The Court, therefore, denies defendant's motion for summary judgment as to plaintiff's claim of termination on the basis of pregnancy.

**V.**

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 22) is hereby **denied**

**DATED** this 30th day of January, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT